**Robbie LAMONS, Plaintiff–Appellee,**

**v.**

**Ronnie and Barbara CHAMBERLAIN, Defendants–Appellants.**

Court of Appeals of Tennessee, Western Section at Knoxville.

April 29, 1993.

Application for Permission to Appeal Denied by Supreme Court Oct. 4, 1993.

John M. Foley, Knoxville, for Appellee.

David D. Creekmore, James P. Hawkins, Knoxville, for Appellants.

CRAWFORD, Judge.

This case involves a contract for the sale of a business. Defendants-sellers appeal from the judgment of the trial court rescinding the contract and awarding plaintiff-buyer $39,-800.00.

Defendants, Ronnie and Barbara Chamberlain (Chamberlains), owned a video rental store in Knoxville, Tennessee. Prior to August 18, 1989, plaintiff, Robbie Lamons (Lamons), visited the store and conversations ensued regarding the possibility of Lamons buying the store from the Chamberlains. On August 18, 1989, the parties signed and executed a Buy and Sell Agreement and promissory note. Lamons paid the Chamberlains a downpayment of $26,000.00 and signed a promissory note to pay a balance of $33,-000.00 in $200.00 per week installments to commence one week after the execution of the agreement.

Relevant portions of the Buy and Sell Agreement as pertaining to the disputed issues are as follows:

\* \* \* \* \* \*

3. The Seller and the Buyer agree that the building which houses the business and which is known as 2702 Martin Mill Pike, is under lease to Ronnie Chamberlain by the owners and through an agent, Christine McLemore. A copy of this Lease Agreement is attached to this Agreement as Exhibit B. Buyer understands that by the terms of the Lease, the Seller is prohibited from subleasing the property to Buyer. However, Buyer further understands that Seller will keep the lease in full force and effect for the benefit of the

Buyer and that Seller does have the agreement of the agent that so long as Seller performs by the terms of the Lease, then the Seller will remain the lessee of the premises and thereby will be able to maintain the Buyer in the premises. However, Buyer agrees to familiarize herself with the terms of the Lease and not to do anything which might be considered a breach of the Lease Agreement so as to cause a default to occur by Seller.

4. As concerns the terms of the Lease Agreement and the Seller's obligations thereunder, Buyer agrees to pay to seller the same amount of monthly rent as is called for by the Lease Agreement; Buyer agrees to provide the insurance as is demanded by the Lease Agreement; Buyer agrees to perform all necessary maintenance and repairs which Seller is required to perform.

5. In addition to fulfilling the terms of the Lease as stated immediately above, Buyer further agrees to insure the contents of the building with a reliable insuror and in sufficient amounts to cover the value of the business assets being transferred to Buyer by this Agreement and to have Seller named as either an additional insured or a loss payee on the policy and to provide Seller with a copy of the policy keeping the same in force at all times until the balance of the Promissory Note has been paid.

Following execution of the documents, Lamons took possession of the business premises and the assets of the video business and commenced renting videos to the public. She operated this business from August 18, 1989, until March 1, 1991, when she ceased operations under the conditions that spawned this controversy.

The chancellor filed a memorandum opinion which concisely sets out detailed findings of fact. We quote from the opinion:

The Defendants were lessees on the involved premises. The lease did not permit subleasing; therefore, the arrangement was made that the Plaintiff would pay the Defendants the monthly lease money who, in turn, paid the monthly lease payments to Christine McLemore, agent for Defendant's lessor. The Buy–Sell Agreement

notes the fact that the seller, that is, the Defendants herein, were prohibited from subleasing the property.

Following execution of the documents, the Plaintiff took possession of the business premises and the assets of the video business, and commenced renting videos to the public. The payments of $200.00 per week were made toward the purchase balance owed by Plaintiff to Defendants.

Over a period of time [Plaintiff] missed some of the $200.00 a week payments; however, Defendants at no time declared Plaintiff in default by reason of the missed payments. It appears that Plaintiff did keep up all of the rental payments, which amounted to $500.00 per month. Apparently on occasion Defendants told her to keep the rental payments up rather than the $200.00 weekly payments, since the lease would come into default if the rental payments were not made.

The matter which brought this dispute to a head arose out of the contention of Defendants that Plaintiff was obligated to pay the real estate taxes on the premises where the video business was being operated. Plaintiff contends that she was not obligated to pay the taxes.

There is a sharp dispute as to just when the Plaintiff was advised that it was her obligation to pay the real estate taxes. The testimony on her behalf is that following the purchase agreement in August of 1989, Defendants made no demand or claim upon her that she must pay the real estate taxes until December of 1990 or perhaps in January or February of 1991. The real estate taxes Defendants asserted Plaintiff owed were some $790.00.

It appears that in early 1990, when the 1989 taxes were being paid, no demand for the Plaintiff to pay those taxes was made. This failure to demand Plaintiff pay taxes is contended by Defendants to have resulted from their desire to help her get started and in recognition of the fact that most of the taxes payable in early 1990 would have been their obligation anyway because they had operated the video business for most of 1989.

In evidence is a blue piece of paper signed by the Chamberlains with the Plaintiff's signature below theirs. The document is dated February 14, 1991, and reads: "Dear Robbie Lamons," that is, the Plaintiff, "If the property taxes are not paid by February 28, 1991, I would presume that you have defaulted on the contract which voids and notifies," which we believe probably means nullifies, "all agreements. As of March, 1991, the parties will vacate the premises."

It is the Plaintiff's contention that this document was presented to her by Defendants in connection with their claim and demand that she pay the real estate taxes on the premises. It is the contention of the Defendants that this document was executed solely so that the Plaintiff could obtain a delay from the Internal Revenue Service in connection with income taxes owed by the Plaintiffs. It appears that the Plaintiff's husband owed some income tax on pension funds he had taken from his company when he left its employ. These pension funds were the source from which the Plaintiff obtained the $26,000.00 downpayment she had paid the defendants on the involved Buy–Sell Agreement.

On February 28 there was a telephone conversation between plaintiff's husband and Mr. Chamberlain and perhaps Mrs. Chamberlain. He told at least Mr. Chamberlain that plaintiff and he were at wit's end, not knowing what to do. They had not been able to raise the money for the real estate taxes. According to the plaintiff's husband, Mr. Chamberlain said that he would come in in the morning and take up the matter.

The next morning, March 1, 1991, the Defendants came into the video store, and met with Plaintiff and her husband. There was not an extensive conversation. The Plaintiff and her husband turned the keys to the store over to the Defendants, who took possession of the store. The Plaintiff and her husband took a few personal items and left the store. Thereafter, Defendants were in possession of it, and they attempted to run it for a few days. It is clear from the evidence that they felt it was not possible to do, so they sold the tapes which had been taken back and closed the store. It is the contention of the Plaintiff that she was wrongfully put out of the store and business, and that the Defendants wrongfully took back the assets purchased. It is the contention of the Defendants that they had no use for the store, could not have operated it as a practical matter and did not put the Plaintiff out. Defendants say that Plaintiff voluntarily turned their business back to the Defendants because she could not operate it successfully.

■ The Chamberlains' contention that plaintiff is obligated to pay the property taxes is based on the language in the Buy–Sell Agreement which states, "Buyer agrees to familiarize herself with the terms of the lease and not do anything which might be considered a breach of the lease agreement so as to cause a default to occur by seller." The Chamberlains' lease agreement for the subject property was attached to the Buy–Sell Agreement and states:

> The LESSEE agrees to and shall pay and discharge all taxes, levied or assessed against the same premises and upon any buildings, improvements, and equipment located hereon, during the term of this lease, by the City of Knoxville, Knox County, State of Tennessee, or the United States of America, or by any other legally constituted taxing authority. Said taxes shall be paid as and when they become due and payable and before same shall become delinquent....

Chamberlains argue that the failure to pay the taxes is a breach of the lease agreement. Thus, the above-quoted language of the Buy–Sell Agreement obligates Lamons to pay the taxes. Lamons, on the other hand, points out that the language of the Buy–Sell Agreement specifically sets out the obligations of the lease agreement which she must undertake and that payment of the taxes is not one of these obligations. The chancellor agreed with Lamons and we agree with the chancellor. We quote again from his memorandum opinion:

> The resolution of this central issue in the case depends upon the determination of the obligations of the parties. Under the

Buy–Sell Agreement, the Plaintiff was obligated to pay Defendants the same amount of monthly rent as called for by the lease, provide insurance as required in the lease agreement between Defendants and the owners of the real estate. Plaintiff was further obligated in the Buy–Sell Agreement to perform all necessary maintenance and repairs which seller, that is, Defendants were required to perform under the Lease. The [Agreement] went on to provide that, in addition to fulfilling the terms of the Lease as stated immediately above, that is, pay rent, insurance, perform maintenance and repairs, the Plaintiff was to insure the contents of the building. Those then are the written obligations of the Buy–Sell Agreement upon the Plaintiff with respect to the Lease.

We have searched the Buy–Sell Agreement and other documents and find no obligation therein requiring Plaintiff to pay the real estate taxes. There is a provision that the Plaintiff was to familiarize herself with the terms of the Lease, and was not to do anything which might be considered a breach of it; however, this falls far short of obligating the Plaintiff to pay the real estate taxes.

The trial court found that the Chamberlains declared a default, effectively notified plaintiff to be out of the premises March 1, 1991, and that this constituted a breach of the Buy–Sell Agreement by the Chamberlains.

Upon finding that defendants breached the Agreement when taking over the business from the plaintiff, the court held that the loss of the premises under the circumstances entitled plaintiff to rescind the contract. The trial court awarded plaintiff a return of her downpayment plus all of the money plaintiff paid to defendants under the Buy–Sell Agreement. The court further awarded pre-judgment interest of six percent per annum on the $39,800.00 from the date of filing suit and dismissed the defendant's counter claim for the unpaid $200.00 installment payments.

Defendants present four issues for this Court's review. The first issue to be addressed is whether the evidence in this case preponderates against the factual findings of the trial court. Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d). The record reflects sharp conflicts in the testimony of the parties as to the circumstances surrounding the Chamberlains' retaking possession of the business. The chancellor had the opportunity to observe the manner and demeanor of all of the witnesses as they testified from the witness stand. Any conflict in testimony requiring a determination of the credibility of witnesses rests in the first instance with the trial court and will be given great weight by the appellate court. *Haverlah v. Memphis Aviation, Inc.,* 674 S.W.2d 297 (Tenn.App.1984). From our review of the record in this case we cannot say that the evidence preponderates against the findings of fact by the trial court. This issue is without merit.

The next issue to be addressed is whether the court erred in holding that the defendants could not claim their right to repossess the business due to default by Lamons in payments as per the contract. Both parties admit that plaintiff, at the time defendants took back the business, was nine or ten $200.00 weekly installment payments behind. These payments were missed throughout plaintiff's tenancy in the business.

Plaintiff looks to the language in the promissory note which states, "If the maker fails to pay as scheduled and fails to pay any two (2) installments consecutively, then the entire remaining balance of this note is immediately due and payable." Plaintiff claims that she never missed two consecutive weekly $200.00 installments and therefore was never technically in breach of the agreement.

Defendants rely on a provision in the Buy–Sell Agreement which states: "Buyer agrees that default in any two or more payments of the promissory note being given for the purchase of the business assets may, at the option of Seller, be treated as a default sufficient to void this agreement, and if such a default should occur, Seller is entitled to immediately enter upon the premises, take

possession of the business assets there existing, and continue the business, whereupon, any balance of the Promissory Note will be considered satisfied." Based upon the testimony at trial, defendants knew that the plaintiff was behind in her weekly payments and would allow plaintiff a delay in paying the weekly payments in order to keep up with the monthly rent payments.

We cannot agree with plaintiff's interpretation of the promissory note provision which would allow plaintiff to pay only every other week and never be in breach of the agreement. However, as the trial court noted, defendants allowed plaintiff to erratically pay the weekly installments and apparently established a course of dealing with plaintiff in accepting overdue payments.

■ As a result of a course of dealing between parties, the holder of an indebtedness may be deemed to have waived the right to accelerate without giving prior notice to the debtor of his intention to do so. *Lively v. Drake,* 629 S.W.2d 900, 903 (Tenn.1982). The chancellor stated in the memorandum opinion: "At a minimum, we think, were defendants to have asserted a default for failure to make the $200 a week payments, they would have had to have given an appropriate notice and a reasonable time for plaintiff to bring the payments up to date." We agree with the chancellor. This issue is without merit.

■ The next issue we address is as stated in appellants' brief: "Did the court err in decreeing rescission when rescission was not sought by the pleadings and when the proof of the case presented no grounds therefor?" In their argument, appellants assert that rescission is not a proper remedy, as it was not specifically pled in plaintiff's complaint. Under Tenn.R.Civ.P. 8.06, pleadings of parties shall be construed so as to do substantial justice. In her complaint, plaintiff avers that she has lost her entire investment and prays for return of her downpayment in addition to other damages. Under the liberal construction of pleadings in Tennessee, the wording of plaintiff's complaint does not necessarily preclude rescission as a possible remedy.

■ Although we agree with the trial court's reasoning and conclusion that defendants breached the agreement, we feel the trial court erred in finding rescission as the proper remedy.

Rescission involves the avoidance or setting aside of a transaction. *Mills v. Brown,* 568 S.W.2d 100, 102 (Tenn.1978). It is an equitable remedy, available where the contract was induced by fraud or duress. *Belote v. Henderson,* 45 Tenn. (5 Cold.) 471, 474 (1868) (duress); *Graham v. First American Nat'l Bank,* 594 S.W.2d 723, 726 (Tenn.Ct.App.1979) (fraud), or where one party unequivocally renounces the contract or is legally unable to perform. *Brady v. Oliver,* 125 Tenn. 595, 617, 147 S.W. 1135, 1140 (1911). It is intended to return the parties to the positions they were in before the transaction took place. *Lindsey–Davis Company v. Siskin,* 210 Tenn. 339, 342–43, 358 S.W.2d 331, 333 (1962); *Lloyd v. Turner,* 602 S.W.2d 503, 510 (Tenn.Ct.App.1980); *Arledge v. Ridge,* 12 Tenn.App. 415, 417–18 (1930). *Williamson v. Upchurch,* 768 S.W.2d 265, 271 (Tenn.App.1988).

As stated in the authorities cited above, rescission is designed to place both parties in the same position as they were in when the contract was contemplated. The chancellor's remedy did not fulfill this objective. The court awarded plaintiff her downpayment and the money she had paid to defendants as her weekly $200.00 installment payments. The chancellor made no mention of the monthly rental payments paid by plaintiff, or any profit received by plaintiff. He further states in his opinion that:

Plaintiff seeks payment for the tapes acquired while she operated the video store. She had an obligation to keep the inventory of tapes up and certain particulars. Under such evidence as there is on the point the tapes were purchased to keep up the inventory, so perhaps the purchases were in accord with her obligation. It is apparent that tapes wear out and become useless in time, so that the mere fact the number of tapes in the inventory increased does not convince the court that leaving the tapes with defendants caused plaintiff

any damage. The entire matter involving the tapes was merely a matter of ongoing operations of the business and is neutral insofar as damages are concerned.

The above quote indicates that the trial court was apparently contemplating damages for breach as opposed to the remedy of rescission. Had the contract been completely rescinded and the transaction been set aside, plaintiff would have been ordered to return any profit received and allowed to receive all rent she paid.

Rescission of a contract is not looked upon lightly. It is available only under the most demanding circumstances and depends upon the individual facts and circumstances of each case. *Early v. Street*, 192 Tenn. 463, 241 S.W.2d 531 (1951); *Robinson v. Brooks*, 577 S.W.2d 207 (Tenn.App.1978). In the trial court and in this Court, plaintiff has quite explicitly stated that she does not seek rescission on the basis of fraud or misrepresentation.

■■■ If the parties cannot be put in status quo, or if, due to the passage of time or other reasons, equity cannot be done, there is no ground for rescission. *Leake v. Gray, Shillinglaw & Co.*, 189 Tenn. 574, 226 S.W.2d 298 (1949). The plaintiff operated this business from August 18, 1989, until February 28, 1991. The evidence shows that during this time she reinvested money into the business and attempted to run a profitable operation. Under the facts of this case, it would be difficult to restore the parties completely to status quo after such time has passed and investments made. It has also been held that if an adequate remedy at law exists, such as an award of damages, rescission will not be granted. *Chastain v. Billings*, 570 S.W.2d 866 (Tenn.App.1978).

■■■ While we agree with the chancellor's holding in favor of plaintiff, we disagree with his assessments of damages. The purpose of assessing damages in breach of contract cases is to place the plaintiff as nearly as possible in the same position she would have been in had the contract been performed, but the nonbreaching party is not to be put in any better position by recovery of damages for the breach of the contract than he would have been if the contract had been fully performed. *Action Ads, Inc. v. William B. Tanner Co.*, 592 S.W.2d 572 (Tenn. App.1979). In the instant case, plaintiff purchased a business operation which at least was initially limited in duration by the terms of the lease agreement for the business premises. The proper measure of damages in this case is to put the plaintiff in the position he would have been in had the breach not occurred, and that is the continuation of the business for the duration of time allowed under the lease agreement. In essence, plaintiff would be entitled to the net profit she would have realized over the time period involved. To determine the net profit over this period, if any, plaintiff's initial investment and other expenses required for the maintenance of the business must of course be deducted from the gross receipts.

■■■ Lost or expected profits are recoverable as damages for breach of contract if they are shown to be the consequence of the breach, provided that the amount is proved with reasonable certainty. *Morristown Lincoln–Mercury, Inc. v. Roy N. Lotspeich Publishing Co.*, 42 Tenn.App. 92, 298 S.W.2d 788 (1956). In order for profits to be recovered there must be reasonable proof of their amount. For this purpose, actual past profits and receipts in the particular business or undertaking where not too remote may be shown. Net profits are ordinarily the proper measure of recovery. 25 C.J.S. *Damages* § 90 (1966).

In the case before us, plaintiff indicates that she did not want to quit the business presumably because of her expectation of profit. Plaintiff must be viewed as realizing the possible pitfalls of opening her own business. If she were operating the business at a loss with no expectation of profit, then plaintiff would be receiving a windfall if allowed to recover her downpayment and other monies she paid. Plaintiff, thus, has the luxury of investing in a business without any risk of failure. This is a proper case for remand pursuant to T.C.A. § 27–3–128.

Further proceedings should be held to determine plaintiff's lost net profits for the time remaining under the lease which from the record before us appears to be September 1,

1992. Profits should be reduced by the overhead as well as all sums paid for the purchase of the business.

Accordingly, the judgment of the trial court as to the amount of damages is vacated and except as to damages is affirmed. The case is remanded to the trial court for further proceedings consistent with this opinion. Costs of the appeal are assessed one-half to appellants and one-half to appellee. The remaining issue concerning prejudgment interest is pretermitted.

HIGHERS and FARMER, JJ., concur.