IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 25, 2002 Session

# DAIRY GOLD, INC., v. MICHAEL THOMAS

**Direct Appeal from the Chancery Court for Hamilton County**
**No. 00-689     Hon. W. Frank Brown, III, Chancellor**

------------------

**FILED JULY 29, 2002**

------------------

**No. E2001-02463-COA-R3-CV**

------------------

In this dispute over a commercial lease, the Chancellor entered Judgment for lessor for limited rents, taxes and attorney's fees. On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., joined, and CHARLES D. SUSANO, JR., J., did not participate.

James R. McKoon, Chattanooga, Tennessee, for Appellant.

James T. Williams, Chattanooga, Tennessee, for Appellee.

**OPINION**

This dispute arises over a commercial lease between Dairy Gold, Inc. (lessor) and Michael Thomas (lessee). Lessor leased the property to Lessee for a ten year term on August 2, 1990, which would expire on September 30, 2000. The lease recites that the property was to be used only as a car wash.

This lease has been the subject of a previous appeal, *Dairy Gold v. Thomas*, 1999 WL 1068701 (Tenn. Ct. App. Nov. 29, 1999). In our prior opinion we found that the lessee took possession of the property in October 1990, but never occupied the building. He learned in 1991 that the building could not be utilized for the type of car wash operation that he had planned, and in 1992, the City sent a warning regarding the condition of the property, and lessor gave lessee permission to demolish the building. Lessee began demolition by June 1, 1992, but later complained that a

billboard on the premises would prevent him from being able to build a new car wash. In 1994, Dairy Gold received a citation from the City that the leased property was unfit or dangerous, and Dairy Gold was told to either bring the building up to code, or demolish it within a certain time frame. Lessee then demolished the building in June 1994, with the lessor's permission.

In June of 1995, lessee notified lessor that he was going to withhold rent until the property was put back in "tenantable" condition. Lessee also took the position that he should be refunded all rents paid to that time, as well as being reimbursed for the cost of demolition. The lessor filed suit in 1996 seeking rent, unpaid property taxes, late fees, etc. In that suit, the Trial Court found that lessee had "simply made a bad business deal" and that he failed to prove that he was entitled to rescission. The Trial Court awarded damages to lessor for rent, taxes, and late charges up to the time of trial in September 1998. The Trial Court's action was affirmed by this Court. *Id.*

Lessor brought this action on June 22, 2000, claiming the lessee was still not paying any rent, and sought rent due from October 1998 to the end of the lease in September 2000. Lessor also sought property taxes, late charges, and attorney fees.

Lessee Answered and filed a Counter-Complaint, alleging that lessor had breached the lease, and lessee was excused from paying rent. Lessee averred that the property was impaired by contamination from underground storage tanks, and that contaminated soil had been stored on the property, rendering the property "untenantable". Lessor answered the Counter-Complaint, admitting that they had removed the underground storage tanks and had done remediation on the site, but denied that lessee was prevented from use of the property. After the trial in this case, the Trial Court issued a Memorandum Opinion and made extensive findings of fact.

The Court found that after the original Judgment against lessee in the first case, Lessee went to the property and looked for environmental problems. Lessee called the Tennessee Department of Environment and Conservation (TDEC) and that the Department inspected the site on September 30, 1998, and informed lessor by letter on December 2, 1998, that it would have to do something about the underground storage tanks. The Court further found this was the first time lessor knew it would have to take action regarding the tanks.

The Court found that lessor commenced removing the tanks on February 23, 1999, and the surrounding soil was contaminated, and permission was received to remove the soil and incinerate it. However, lessor decided to decontaminate the soil on site by aeration, which required moving the dirt pile from the rear of the property to the front, and turning the dirt monthly until the contaminant had evaporated.

The court found that TDEC cited lessor on May 7, 2001 for failing to carry out the aeration properly, and that the dirt pile had never been properly processed. The court found that lessee never informed lessor that lessee wanted to use the property during the two year period, and thus never asked lessor to remove the contaminated dirt, which the Court found was contrary to lessee's claim for lost profits. Likewise, the court found that lessor never informed lessee that it was

going to remove the storage tanks, and never told lessee that it would remove the dirt.

The Court held that lessor did not breached the lease by going on the property, and doing what TDEC required. Further, the Court found that Lessee never obtained a building permit, and never explained why the environmental hazard was not of earlier concern.

The Court ruled that it would be inequitable to allow lessor to recover, when lessee could not use the premises, and that lessee could not recover because he failed to prove any lost profits. The Court found that lessor had substantially interfered with lessee's rights to the leasehold, and that lessor constructively evicted lessee as of December 2, 1998, when it had notice that it would have to remedy the underground storage tank situation. The Court stated that it was not convinced that lessee ever had a good faith intent to place a car wash on the property, and awarded judgment against the lessee for the rent from October 1, 1998 to December 2, 1998, plus a 5% late charge. The Court also found that the 1998 taxes were not recovered in the prior judgment, and that lessor was entitled to $1,521.24 of the $1,657.60 taxes due for 1998. The court based its ruling on the fact that until TDEC notified lessor of their requirements to remove the underground storage tanks, lessee was in no different position than he had been before.

The court also held that the lease provided for attorney fees to be paid to the prevailing party, and awarded lessor one-third of the amount of the judgment, or $1,536.76.

Issues of law come to this Court without any presumption of correctness, and our review is *de novo*. We find that the evidence does not preponderate against the Trial Court's findings of fact in this case, which come to this Court with a presumption of correctness. Tenn. R. App. P. 13(d).

Lessee argues that he was constructively evicted as of September 30, 1998, when TDEC inspected the property, but the proof is undisputed that lessor did not receive notice of having to take any action with regard to the tanks prior to December 2, 1998. As the Trial Court explained, constructive eviction occurs when a landlord permanently and substantially interferes with the tenant's beneficial enjoyment of the premises. *Tenn-Tex Properties v. Brownell-Electro, Inc.*, 778 S.W.2d 423 (Tenn. 1989). Further, the issue of what constitutes a substantial and permanent interference is a question of fact. *Id*.

Both knew that the tanks were on the premises prior to the execution of the lease, and knew that there would be possible ramifications from the same. *See Dairy Gold v. Thomas*. The parties' positions did not change until TDEC notified lessor that it was going to have to immediately remove the tanks. We conclude the Trial Court was correct in holding that a constructive eviction took place as of December 2, 1998.

Lessee argues that the Trial Court erred in adjudging him liable for rent through December 2, 1998, based on the above argument regarding the date of the constructive eviction. Lessor argues the Trial Court erred in not awarding rent for the entire term of the lease. We believe,

under all the circumstances, the Trial Court's finding was proper as to the time of the constructive eviction.

Lessee argues that the Trial Court erred in awarding lessor property taxes for 1998, because taxes were a part of the prior judgment. The Trial Court held that taxes awarded were not collected in the prior judgment, because they had not been billed at the time of that trial. A review of the damages calculation from the prior trial reveals that the Trial Judge is correct. The record contains a detailed listing of the rent charges, taxes, etc., which were sought by and awarded to lessor, and shows that only the 1995-1997 taxes were included. We find this issue to be without merit.

Lessee argues that the Trial Court erred in failing to award him lost profits. The law is well-settled that lost profits can only be recovered when they are proven with reasonable certainty, and must not be remote or speculative. *Tire Shredders, Inc. v. ERM-North Central, Inc.,* 15 S.W.3d 849 (Tenn. Ct. App. 1999). Lessor must show that the loss was a direct consequence of lessor's breach. *Lamons v. Chamberlain*, 909 S.W.2d 795 (Tenn. Ct. App.1993).

The Trial Court found that lessee never had a good faith intent to construct a car wash on the leased premises, and found that lessee failed to prove that he was entitled to lost profits, failed to show what it would have cost to construct the proposed car wash on the property, and never sought a building permit. The Trial Court refused to hear evidence regarding lost profits because the proof was too speculative. The evidence does not preponderate against the Court's findings.

Next lessee argues that the Trial Court erred in failing to award him attorney's fees and in awarding attorney's fees to lessor. The Trial Court's award of attorney's fees to lessor was based upon a provision in the lease which states that if a lawsuit is brought regarding an act of either party to the lease or to recover money due thereunder, then the prevailing party would be entitled to reasonable attorney's fees. The Trial Court found that lessor was the prevailing party "barely" and awarded it a fee of one-third of the damage amount awarded. Lessee argues that lessor was only successful in recovering two months' rent out of the 24 month period it sought, and since lessee was constructively evicted, he should have been declared the prevailing party.

Determination of who is the "prevailing party" under the lease requires us "to apply the legal principles relative to the interpretation and construction of contracts. The cardinal rule is that the intent of the parties must be ascertained and given effect. *International Flight Center v. City of Murfreesboro*, 45 S.W.3d 565, 570 (Tenn. Ct. App. 2000).

The term "prevailing party" has commonly been defined as "the party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention. The one in whose favor the decision or verdict is rendered and judgment entered." BLACK'S LAW DICTIONARY 1188 (6th

Ed.1990).[1]  Lessor sought and received a judgment for rent, though not to the extent claimed, but lessee was not awarded judgment for any damages.  Accordingly, we agree with the Trial Court that lessor was the prevailing party under the terms of the lease.

While lessor contends that the Trial Court's award of attorney's fees was not reasonable, we will not disturb the Trial Court's decision regarding the reasonableness of attorney's fees, absent a showing of abuse of discretion.  *Albright v. Mercer*, 945 S.W.2d 749 (Tenn. Ct. App. 1996).  The Trial Court did not abuse its discretion on this issue.

We conclude the remaining issues are without merit and affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Michael Thomas.

_____
HERSCHEL PICKENS FRANKS, J.

---

[1]The United States Supreme Court has defined "prevailing party" as "one who has succeeded on any significant claim affording it some of the relief sought." *Texas State Teachers Ass'n. v. Garland Indep. School Dist.*, 489 U.S. 782, 791, 109 S. Ct. 1486, 1493, 103 L. Ed. 2d 866 (1989).