IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

January 19, 2005 Session

REM NOBLE AND BRANDT NOBLE, INDIVIDUALLY, and D/B/A/
NOBLE, INC. v. TOM PEASE, INDIVIDUALLY, AND CORPORATE
COPY, INC.

An Appeal from the Chancery for Shelby County
CH-03-0286     Arnold B. Goldin, Chancellor

No. W2004-00439-COA-R3-CV - Filed July 22, 2005

This case is about the sale of a business. The owner of a copy machine business sold the assets of the business to a competitor. The buyer purchased the company through a promissory note that required monthly payments. After the sale, the seller and the seller's son became employees of the buyer. However, while employed by the buyer, the seller continued to deal in copy machines on the side. The seller voluntarily left employment, and his son was fired. After the buyer learned of the seller's side dealings in copiers, the buyer stopped making payments on the promissory note. The seller sued the buyer for failing to make the agreed upon payments. The buyer counter-sued for breach of contract. After a trial, the trial court rescinded the purchase agreement. We reverse, finding that rescission was not an appropriate remedy in this case, and remand for a determination of the appropriate damages.

Tenn. R. App. P. 3 Appeal as of Right; the Judgment of the Chancery Court
is Affirmed in part, Vacated in part, and Remanded in part.

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Henry L. Klein, Memphis, for plaintiffs/appellants Rem Noble and Brandt Noble

Robert B.C. Hale, Memphis, for defendants/counter-plaintiffs/appellees Tom Pease and Corporate Copy, Inc.

OPINION

Plaintiff/Appellant Rem Noble ("Noble") was the sole owner of Noble, Inc., which sold and serviced copiers and fax machines. Noble had been in this type of business for thirty years. Defendant/Appellee Tom Pease ("Pease") owned a business called Corporate Copy, Inc. ("Corporate Copy"), which also sold and serviced copiers and other office equipment.

In October 2000, Noble contacted Pease to ask him if he was interested in purchasing Noble, Inc. After negotiations, in November 2000, Noble and Pease entered into an Asset Purchase Agreement ("Agreement") whereby Pease agreed to buy certain assets, property, and property rights from Noble. Noble's son, Brandt Noble ("Brandt") was also a party to the Agreement. The purchase price of the assets was $700,000, with $100,000 to be paid before November 30, 200 and the remaining $600,000 to paid according to the terms of a promissory note. Under the terms of the note, Pease agreed to pay Noble $7,743.12 monthly for 96 months; this monthly amount included 5.5% interest. The Agreement stated that it covered "parts, machines, supplies and the like that Buyer [Pease] selects–the amount of which will be determined at a later date. Any remaining machines, supplies, or parts may be disposed of by Rem Noble in any manner that he chooses." The Agreement also included all of Noble's customers, with the exception of six customers who were specifically listed. The parties agreed that both Rem and Brandt Noble would be employed by Corporate Copy. As a part of the employment of Rem and Brandt Noble, the Agreement had a non-compete clause that stated:

> [i]t is further agreed that as a part of the purchase price a non-compete agreement is entered into between Rem Noble and Brandt Noble and Buyer. Both Rem Noble and Brandt Noble agree that for the goodwill portion of $250,000 neither will seek employment or be employed by another office equipment dealer engaged in the sale of analog or digital copiers, or the servicing of such machines, within a 100 square mile radius for a duration of 48 months from the original date of employment. Should such an event take place, suit would be brought and the above goodwill would be forfeited. This Non-Compete Agreement would be null and void if either Rem Noble or Brandt Noble should be dismissed for any reason.

After the purchase, both Rem and Brandt Noble commenced working for Corporate Copy. In approximately June or July 2001, after a disagreement with Pease, Rem Noble voluntarily left his employment in with Corporate Copy. Noble's son, Brandt, continued to work for Corporate Copy until he was fired in August 2001. In September 2001, Rem Noble became employed by a competitor of Corporate Copy. (Vol.2, 99.) At some point after both Rem and Brandt Noble left Corporate Copy, Pease discovered a document dated November 13, 2000, which, according to Pease, showed that Rem Noble had bought and sold copy machines "off the books" during his employment, in violation of the Agreement. Pease also asserts that, after Rem Noble left Corporate Copy and went to work for a competitor, he continued to call on the customers covered by the Agreement, customers not specifically excluded.

In December 2002, approximately a year and a half after Rem and Brandt Noble left employment with Corporate Copy, Pease discontinued making the monthly payments under the promissory note. In February 2003, Rem and Brandt Noble filed a lawsuit against Pease and Corporate Copy for breach of contract, seeking a judgment for the amounts still owed under the Agreement, as well as prejudgment and post judgment interest, and attorney's fees and costs.

In response, Pease and Corporate Copy filed an answer and Corporate Copy filed a counter-claim against both Rem and Brandt Noble, as well as Noble, Inc. In the answer, Pease admitted that he had not paid the monthly amounts due on the promissory note since December 2002, but asserted that Noble's actions breached the Agreement, and excused Pease from further payments. In the counterclaim, Pease alleged that by violating the terms of the Agreement, especially the terms of the non-compete clause, Noble had forfeited any right to the $250,000 payment for the goodwill of Noble, Inc. The counterclaim also asserted that both Rem and Brandt Noble had violated the implied covenant of good faith and fair dealing, their fiduciary obligations to Corporate Copy, and the duty of loyalty and fidelity. Pease sought damages for these violations in an amount not less than $85,000, as well as prejudgment and postjudgment interest and attorney's fees. Pease also sought an injunction against both Rem and Brandt Noble prohibiting any further violations of the Agreement.

A bench trial was held on December 1, 2003. The trial court heard testimony from a number of witnesses, including Rem and Brandt Noble, Tom Pease and Corporate Copy's general manager, Paul Ginn ("Ginn"). The witnesses testified about the terms of the Agreement between the parties, Noble's conduct after the purchase, and whether Noble's actions were prohibited under the Agreement.

As to the copy machines allegedly bought and sold by Noble "off the books," Noble testified that, before the Agreement with Pease was signed, he had agreed to purchase the machines from MITA, a copy machine maker. Noble testified that he nevertheless offered to sell these machines to Corporate Copy but that Corporate Copy was not interested. Pease and Ginn disputed Noble's testimony, maintaining that they knew nothing about the copy machines purchased by Noble from MITA until after Noble left Corporate Copy.

Noble and Pease also offered differing testimony on Noble's actions with respect to a customer of Noble, Inc., Troll Communications ("Troll"). Noble testified that machines leased by Troll from Noble, Inc. came up for renewal while Rem and Brandt Noble were employed at Corporate Copy. Troll agreed to purchase new copy machines through Corporate Copy, but only if Corporate Copy purchased Troll's old machines. Noble asserted that Corporate Copy was given the opportunity, but refused to purchase the Troll's machines. At that point, Noble explained, he bought the used copy machines from Troll in order to get the new business and maintain a customer relationship with Troll. In contrast to Noble's testimony, Pease testified that Corporate Copy was never given the option of buying used machines from Troll.

At trial, Pease also asserted that after Noble resigned from Corporate Copy, Noble started working for a competitor and began calling on accounts that were part of the goodwill sold to Corporate Copy. Pease asserted that he stopped making payments under the promissory note because Noble had breached the Agreement.

After considering all of the testimony, the trial court entered its order on the matter on January 13, 2004. The relevant portions of the order are as follows:

-3-

7. Through the Agreement, Corporate Copy purchased the ongoing business of Noble, Inc., which included its customers and the cash flow derived therefrom.

9. As employees of Corporate Copy, both Rem Noble and Brandt Noble assumed a duty of loyalty and good faith to their employer.

10. There is credible evidence in the record that Rem Noble, in spite of the fact that he had sold his business and became an employee of Corporate Copy, was conducting business on the side and that his activities in this regard had the effect of depriving Corporate Copy of these sales.

11. Rem Noble's testimony in relation to the sale of copiers, particularly the Troll copiers, was not credible.

14. Although Brandt Noble was effectively fired, when looking at all of the facts surrounding this situation, his employment with Corporate Copy really ceased as a result of a constructive discharge based upon the actions and activities in which his father, Rem Noble, was then involved.

15. The actions of Rem Noble struck at the heart of the Agreement and had the effect of negating the benefit of the bargain contracted for by Corporate Copy.

16. Based upon all of the facts, the Court finds that this Agreement should be rescinded and Plaintiffs' Complaint is dismissed and the Asset Purchase Agreement is rescinded pursuant to the Counter-Claim.

The order of the trial court does not elaborate further on the actions required in order to effectuate the rescission, the amount of money Rem Noble would be required to refund to Pease, whether Pease would be permitted to retain profits made pursuant to the transaction, any rental payments or other payments for use of assets, and the like.

From this order, Rem and Brandt Noble now appeal. On appeal, Noble argues that the trial court erred in granting rescission because Pease did not seek it in his counter-claim and because the considerable passage of time makes it impossible to return the parties to the status quo.

Since this case was tried by the trial court sitting without a jury, we review the trial court's factual findings *de novo* accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. **Campbell v. Florida Steel Corp.**, 919 S.W.2d 26, 35 (Tenn. 1996); Tenn. R. App. P. 13(d). The trial court's legal conclusions are reviewed *de novo* with no presumption of correctness. **Campbell**, 919 S.W.2d at 35.

On appeal, Noble first argues that the remedy of rescission was not appropriate in this case, citing **Lamons v. Chamberlain**, 909 S.W.2d 795 (Tenn. Ct. App. 1993). In **Lamons**, the parties executed an agreement for the purchase of a video rental store. **Id.** at 796. The purchasers paid a substantial down payment and signed a promissory note for the remainder of the purchase price. **Id.** After the purchaser had run the business for over a year and a half, a dispute arose in which the sellers alleged that the purchasers had breached an obligation pursuant to the purchase agreement. **Id.** at 797. In response, the sellers re-took possession of the business premises, attempted to run the video business for a few days, and then sold the inventory and closed the store. **Id.** at 799. The plaintiff

purchasers then sued the defendant sellers for wrongfully putting them out of the store and repossessing the assets purchased. *Id.* The trial court found that the defendant sellers had breached the agreement when they repossessed the business, and awarded the plaintiff purchasers rescission of the purchase agreement, requiring the defendant sellers to refund the plaintiff purchasers' down payment and the installment payments under the promissory note. *Id.* at 799. The defendant sellers appealed, arguing in part that rescission was not a proper remedy. *Id.* at 800.

The appellate court agreed with the trial court's finding that the sellers had breached the agreement, but found that rescission was not appropriate under the circumstances of the case. *Id.* The *Lamons* court discussed rescission as an equitable remedy, quoting *Williamson v. Upchurch*, 768 S.W.2d 265, 271 (Tenn. Ct. App. 1988):

> Rescission involves the avoidance or setting aside of a transaction. It is an equitable remedy, available where the contract was induced by fraud or duress, or where one party unequivocally renounces the contract or is legally unable to perform. It is intended to return the parties to the positions they were in before the transaction took place. *Lamons v. Chamberlain*, 909 S.W.2d 795 (Tenn. Ct. App. 1993) (citations omitted).

*Lamons*, 909 S.W.2d at 800. The *Lamons* court emphasized that the remedy of rescission is "designed to place both parties in the same position as they were in when the contract was contemplated." *Id.* The appellate court noted that the trial court's order did not fulfill that objective; it required only that the seller refund the down payment and the weekly payments made under the promissory note. *Id.* It stated that, "[h]ad the contract been completely rescinded and the transaction been set aside, [the purchaser] would have been ordered to return any profit received. . . ." *Id.* at 801. The appellate court agreed with the finding that the seller breached the agreement, but found that the remedy of rescission was inappropriate:

> Rescission of a contract is not looked upon lightly. It is available only under the most demanding circumstances and depends upon the individual facts and circumstances of each case. . . .
> 	If the parties cannot be put in status quo, or if, due to the passage of time or other reasons, equity cannot be done, there is no ground for rescission. . . . The [purchaser] operated this business from August 18, 1989, until February 28, 1991. The evidence shows that during this time she reinvested money into the business and attempted to run a profitable operation. Under the facts of this case, it would be difficult to restore the parties completely to status quo after such time has passed and investments made.

*Id.* On this basis, the appellate court vacated the trial court's award of rescission, and remanded for an appropriate assessment of damages. *Id.* at 801, 802.

In the instant case, as in *Lamons*, considerable time passed from the date of the purchase agreement to the date Noble filed this lawsuit; here a time period of approximately two years. In the course of the purchase, Corporate Copy acquired assets of the Noble, Inc, including inventory, copy machines, equipment, customer lists, service contracts with clients and then operated the business as an ongoing concern. Rem and Brandt Noble worked for Corporate Copy until the disputes arose less than a year after the Agreement was signed. Corporate Copy made payments under the promissory note for the approximately two-year period after the Agreement was signed. Although the record is unclear, it appears that, after Pease discontinued the payments under the promissory note, Corporate Copy continued to utilize the assets of Noble, Inc. in the operation of Corporate Copy, and that the assets of both corporations are thoroughly intermingled. As noted in *Lamons*, in order to rescind the purchase agreement, Pease and Corporate Copy would be required to return any profit received as a result of the purchase. *Lamons*, 909 S.W.2d at 801.

Pease argues that rescission was an appropriate remedy because, to quote the trial court, "the actions of Rem Noble struck at the heart of the Agreement and had the effect of negating the benefit of the bargain contracted for by Corporate Copy." Indeed, the record supports the trial court's factual finding on Noble's breach of the Agreement. Regardless, however, of the gravity of the wrong committed by Noble, as noted in *Lamons*, if "the parties cannot be put in status quo, or if, due to the passage of time or other reasons, equity cannot be done, there is no ground for rescission." *Id.* In this case, due to the passage of time and the difficulty of unwinding the transaction, it appears that rescission is not the appropriate remedy.

Implicit in the trial court's order was a finding that Rem Noble breached his duty of loyalty to Corporate Copy during his employment, and that he breached the noncompete agreement while it was in effect, at least until Brandt Noble's employment with Corporate Copy was terminated. Since the trial court awarded rescission, damages for this conduct was not addressed. Accordingly, we remand to the trial court for a determination of damages on these issues and arising out of the breach of the Agreement.

Pease argues on appeal that if the grant of rescission is reversed, that Noble should forfeit the $250,000 that Pease paid for the goodwill of Noble, Inc., and that Noble is not entitled to the payments due under the Agreement. Pease asserts as well that the doctrine of unclean hands should prevent Noble from enforcing the Agreement. All of these arguments may be addressed by the trial court on remand.

Thus, while we affirm the trial court's determination as to liability, the grant of rescission and the award of damages pursuant to it must be vacated, and the cause remanded for an appropriate award of damages. On remand, the trial court may, in its discretion, reconsider its dismissal of Noble's initial complaint and determine if Noble is entitled to recovery under his initial complaint. It may determine, in its discretion, whether additional proof should be permitted on any of the issues on remand. The remaining issues on appeal are pretermitted.

Accordingly, the decision of the trial court on liability is affirmed, but the grant of rescission and the resulting award of damages is vacated, and the cause is remanded for further proceedings consistent with this opinion. Costs of the appeal are assessed against Appellees, Tom Pease and Corporate Copy, Inc., for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE