IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 17, 2019 Session

## MARY ANN SKLAR v. PATRICK CLANCY, ET AL.

**Appeal from the Chancery Court for Jefferson County**
**No. 16-CV-116      Telford E. Forgety, Jr., Chancellor**

——————————————————

**No. E2018-01487-COA-R3-CV**

——————————————————

This appeal involves a review of the denial of a motion pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure. We affirm the ruling of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Jeffrey A. Armstrong, Morristown, Tennessee, for the appellants, Mary Ann Sklar and Rosemary Sklar.

Luke D. Durham, Knoxville, Tennessee, for the appellee, Patrick Clancy.

## OPINION

## I. BACKGROUND

This matter involves a 30-acre farm located at 2563 East U.S. Highway 25/70, Dandridge, Tennessee ("the Real Property"). Mary Ann Sklar ("Seller"), the owner of the Real Property, entered into a land purchase contract with Patrick Clancy on September 6, 2016. The agreement stated that "[t]he purpose of this contract permits the purchaser, Patrick Clancy, exclusive use and ownership of the 30 acres . . . owned currently by seller, Mary Ann Sklar . . . ." It further provided that "[i]n return, Mary Ann Sklar, Rosemary Sklar, Thomas Cartwright will have right to occupy the property with agreement to terms in separate binding contract." The contract was acknowledged by a notary public and was "Witnessed by" Rosemary Sklar. The Real Property was conveyed

to Clancy by quitclaim deed executed by Seller on September 8, 2016, and recorded with the Register of Deeds for Jefferson County, Tennessee, on September 20, 2016.[1]

Seller is a widow in her 70s who claimed she engaged Clancy regarding the care of animals on the farm that she had inherited in 1985 from her mother. She contends that Clancy tricked her into signing the quitclaim deed rather than a business contract.

Clancy asserts that he agreed to care for Seller's animals, assume all debt and liens on the property, and pay any outstanding property taxes in return for Seller transferring the Real Property and the animals to him. According to Clancy, he intended to open the property to the public for educational purposes. He stated that the Sklars were "to continue to reside on the property pursuant to [a] later agreed upon lease."

Seller initiated the instant litigation seeking to rescind the quitclaim deed to the Real Property. Clancy responded that if the quitclaim deed was to be rescinded, he would be entitled to recover the consideration he paid for it, including paid liens and taxes and the value of any improvement to the Real Property. Seller followed up with an "Amendment to Petition to Rescind Quitclaim Deed" on March 6, 2017, requesting that the land purchase contract be declared void or rescinded.

A bench trial occurred on November 29, 2017. In the judgment entered on January 12, 2018, the trial court ordered as follows:

> The Petition, as amended, to rescind the parties' quitclaim deed and land purchase contract is granted, expressly conditioned upon the Petitioner's payment of $21,800 to the clerk of this court, for the benefit of respondent, within forty-five days of the trial, on or before January 13, 2018. If petitioner does not pay $21,800 into the clerk of the court on or before January 13, 2018, the quitclaim deed and land purchase contract are not rescinded and are, therefore, upheld and found by this court to be valid and enforceable[.]

In the memorandum opinion incorporated by reference, the trial court observed as follows:

> … [T]his contract permits the purchaser, Patrick Clancy, exclusive use and ownership . . . of 30 acres . . . .

---

[1] Seller testified that she did not sign the land purchase contract or the quitclaim deed. On this issue, the trial court found that "[t]he evidence is absolutely overwhelming that Ms. Skylar [sic] was told what she signed, understood what she signed, knew what she was signing and on that point the evidence is just overwhelmingly against Ms. Skylar [sic]."

In return, Mary Ann Skylar [sic], Rosemary Skylar [sic], Thomas Cartwright will have the right to occupy the property with agreement to terms in separate binding contract.

The paragraph is contradictory in itself . . . .

You get the right to occupy the property in the Skylars [sic], what is it? Is it a life estate[?] The land purchase contract doesn't call it that. Is it a lease? The land purchase contract doesn't call it that. Is it a license? It doesn't call it that.

It says that there are terms in a separate binding contract, which indicates to the court that [there] were to have been other terms to define the Skylars [sic] right to occupy the property. That's what it says. There were to have been other terms. Well apparently those other terms were never settled. There is nothing in the record to show that they were settled what those other terms were to have been. There is nothing in the record to show what the parties intended to do.

You move on beyond that, the quit claim deed executed two days later contains no provision in it whatsoever about the Skylars [sic] right to occupy the property either by life estate, by lease, by license. It contains no provisions whatsoever.

The question then this whole transaction and by the way the court has raised the issue about whether or not the land purchase contract was merged out by the deed and ordinarily speaking, they are. Ordinarily speaking the underlying land contract in a purchase and sale transaction is merged out by the deed and it's the provision of the deed that controls.

. . . [H]ere, in the court's opinion there is no question in the court's mind but that there was to have been some right of possession in the Skylars [sic] as a matter of the consideration. . . . [T]he Skylars [sic] were to have had some right to occupy the property.

* * *

. . . [T]he land purchase contract says in the first sentence, paragraph one, Mr. Clancy's got the exclusive right to

- 3 -

exclusive use and ownership of the 30 acres and says that the Skylar's [sic] have the right to occupy the property. So its internally inconsistent and then the quitclaim deed does not refer to a right of occupation in the Skylars [sic], lease, life estate, license or anything else. It doesn't make any provision for the Skylars [sic] to have any occupation joint with Mr. Clancy or otherwise.

\* \* \*

. . . You haven't asked me to construe it, but even if you had, how do I make a contract for these parties when the terms of that occupation by the Sklars was very clearly to have been defined by the parties in a separate contract and it never was. . . .

The trial court ultimately found that the parties' agreement "just is so indefinite here that this land contract and this quit claim deed cannot be, just cannot be enforced." The court specifically set both aside for "lack of definiteness." The memorandum opinion reflects the trial court determined that there was not an enforceable express contract between the parties. We note that a contract "must be sufficiently definite to be enforced." *Anderson Cnty. v. Architectural Techniques Corp.*, No. 03A01-9303-CH-00110, 1993 WL 346473, at \*4 (Tenn. Ct. App. Sept. 9, 1993) (citing *Johnson v. Central Nat'l Ins. Co.*, 356 S.W. 2d 277 (1961)); *see Doe v. HCA Tenn. Health Servs. of Tennessee, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001).

The trial court conditioned rescission upon Seller paying Clancy the amount of $21,800 within 45 days in order to return him back to the position he was in before the transaction took place. No appeal was taken from the judgment. Seller never paid $21,800 into the court. As a result, the order granting rescission was revoked by the judgment's terms.

Clancy thereafter filed a detainer summons against the Sklars requesting possession of the Real Property. Seller filed a "Motion for Relief from Judgment" pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure, in which she argued that there was an "inherent contradiction in the judgment." Seller observed that the trial court had ruled the contract between Clancy and Seller lacked sufficient definiteness to be enforceable. She contended that her failure to reimburse Clancy "did not, as a matter of law, make the indefinite land purchase contract and quitclaim deed 'valid and enforceable.'" Seller argued that the status quo could have been restored by simply awarding a money judgment against her while immediately setting aside the quitclaim deed and the contract. The trial court, however, denied the Rule 60.02 motion and dismissed it with prejudice. The court further awarded possession of the Real Property to Clancy and ordered that a "Writ of Possession may issue at any time after thirty (30) days

after judgment . . . ." The Sklars filed a timely appeal. After Seller requested a stay of proceedings pending the appeal, we granted it conditioned "upon the posting by the appellants of a bond in cash, or by appropriate surety satisfactory to the Trial Court, in an amount to be determined by the Trial Court." At a hearing on September 26, 2018, the trial court set the bond amount at $15,000. The Sklars moved for review, arguing that the bond was unjustly high in light of the fact that they were proceeding as indigent persons. We denied the motion by order entered October 18, 2018, and review by the Tennessee Supreme Court was denied in an order entered on November 1, 2018. The Sklars ultimately did not post the required bond but instead relinquished possession of the Real Property to Clancy.

## II. ISSUES

The issues raised on appeal by the Sklars are restated as follows:

> a. Was the denial of Seller's Rule 60.02 motion an abuse of discretion?
>
> b. Whether the doctrines of res judicata or collateral estoppel barred the trial court from granting Clancy's detainer summons/warrant for possession of real property he purportedly purchased from Seller?
>
> c. Did the trial court err by ordering the Sklars to vacate the property?

## III. STANDARD OF REVIEW

The trial court heard this case without a jury. Accordingly, our review of the trial court's findings of fact is *de novo* on the record with a presumption of correctness afforded to the trial court's findings unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *M&M Elec. Contr., Inc. v. Cumberland Elec. Membership Corp.*, 529 S.W.3d 413, 422 (Tenn. Ct. App. 2016). The review of the trial court's conclusions of law is conducted *de novo* with no presumption of correctness. *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012); *Brunswick Acceptance Co., LLC v. MEJ, LLC*, 292 S.W.3d 638, 642 (Tenn. 2008); *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006).

A trial court's ruling on a Rule 60.02 motion for relief from a final judgment must be reviewed under an abuse of discretion standard. *Hussey v. Woods*, 538 S.W.3d 476, 487 (Tenn. 2017); *Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012). Abuse

of discretion is found only if the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008). The appellate court should "review a [trial] court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by the evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524-25 (Tenn. 2010) (internal citations omitted). "The abuse of discretion standard does not permit an appellate court to merely substitute its judgment for that of the trial court." *Discover Bank*, 363 S.W.3d at 487.

## IV.  DISCUSSION

### A.

Based upon its finding that the provisions of the land purchase contract are contradictory, the trial court held "that the quit claim deed and the land purchase contract must be set aside for lack of definiteness." The court further ruled that in order to rescind the quitclaim deed and the land purchase agreement, Clancy must "be returned to the status quo" as "that's one of the duties of the party who seeks to rescind a contract." In the judgment, the trial court held as follows:

> The Petition, as amended, to rescind the parties' quitclaim deed and land purchase contract is granted, expressly conditioned upon the Petitioner's payment of $21,800 to the clerk of this court, for the benefit of respondent, within forty-five days of the trial, on or before January 13, 2018. If petitioner does not pay $21,800 into the clerk of the court on or before January 13, 2018, the quitclaim deed and land purchase contract are not rescinded and are, therefore, upheld and found by this court to be valid and enforceable.

As noted above, Seller did not appeal from the judgment entered on January 12, 2018, and it became a final judgment.

A judgment or order of final disposition that adjudicates the rights and claims of all the parties to an action becomes final thirty days after it is entered. *See* Tenn. R. Civ. P. 58, 59; *see also* Tenn. R. Civ. P. 54; Tenn. R. App. P. (3)(a); *Furlough v. Spherion Atl. Workforce, LLC*, 397 S.W.3d 114, 133 (Tenn. 2013). Within 30 days of entry of an order, a party may seek relief from the order by filing a motion under Tennessee Rule of

Civil Procedure 59.02. *Discover Bank*, 363 S.W.3d at 489. A party who waits more than 30 days after entry of an order to seek relief must do so under Rule 60.02. *Campbell v. Archer*, 555 S.W.2d 110, 112 (Tenn. 1977).

After the detainer summons was issued, Seller filed her motion pursuant to Rule 60.02 seeking relief from the original judgment. She did not submit any affidavits or other evidentiary materials with the motion. She argued only that "Petitioner's failure to reimburse respondent by January 13, 2018, did not, as a matter of law, make the indefinite land purchase contract and quitclaim deed 'valid and enforceable.'"

On appeal, Seller requests relief pursuant to either Rule 60.02(1) or Rule 60.02(5) of the Tennessee Rules of Civil Procedure. Rule 60.02 reads in relevant part as follows:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect . . .; or (5) any other reason justifying relief from the operation of the judgment.

Tenn. R. Civ. P. 60.02.

The Sklars contend that the original judgment granting rescission was contradictory within its own terms because it made "the rescission conditioned upon Mary Ann Sklar paying $21,800 to reimburse Clancy for property taxes and 'other expenses,'" but if that payment was not made, the land purchase contract and quitclaim deed would not be rescinded and would be found to be valid and enforceable. Seller contends that her failure to make the $21,800 payment does not add definiteness to the contract and quitclaim deed for the purpose of enforcement. She further notes that the now "valid and enforceable" contract reserved the Sklars' "right to occupy the property . . . ." Thus, according to the Sklars, they cannot wrongfully possess real property that they have a legal contractual right to occupy.

Clancy asserts that counsel for Seller expressly agreed to the formulation of the conditional rescission at trial, as when the court asked counsel for the parties how the judgment should deal with the issue, counsel for the Sklars stated: "The court is stating that condition. I don't see how it could be worded differently." Clancy additionally argues that Seller did not appeal from this allegedly contradictory judgment and allowed it to become a final judgment. Clancy further notes that the Sklars have provided no explanation for not noticing the asserted contradiction during the appeal period. *See Selitsch v. Selitsch*, 492 S.W.3d 677, 689 (Tenn. Ct. App. 2015) (holding that a party fails to meet the standard to show facts supporting a failure to avoid mistake, inadvertence, surprise, or neglect when there is evidence that they could have discovered the error in

question).

Relief under Rule 60.02 is considered an exceptional remedy that is designed to strike a proper balance between the competing principles of finality and justice. *Furlough*, 397 S.W.3d at 127. Rule 60.02 allows relief from a final judgment under limited circumstances. *Hussey*, 538 S.W.3d at 482. "The burden is on the party seeking this extraordinary relief to establish facts explaining why such relief is justified." *Selitsch*, 492 S.W.3d at 682; *Wine v. Wine*, 245 S.W.3d 389, 397 (Tenn. Ct. App. 2007). In order to be granted relief under Rule 60.02, the party seeking relief must substantiate the request with clear and convincing evidence. *Hussey*, 538 S.W.3d at 483; *Furlough,* 297 S.W.3d at 128; *Selitsch*, 492 S.W.3d at 682; *McCracken v. Brentwood United Methodist Church*, 958 S.W.2d 792, 795 (Tenn. Ct. App. 1997). Evidence sufficient to grant relief under Rule 60.02 is only clear and convincing when it leaves no serious or substantial doubt about the correctness of the conclusions drawn. *Hussey*, 538 S.W.3d at 483. The escape valve offered by Rule 60.02 "should not be easily opened." *Furlough*, 297 S.W.3d at 127 (quoting *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991) (internal quotation marks omitted)).

The only argument advanced by the Sklars in relation to the Rule 60.02 motion is that the judgment from which Seller did not appeal was drawn in the manner in which the trial court found the deed and contract to be unenforceable, but then found it to be enforceable if Seller could not restore Clancy to the status quo. The Sklars are complaining that the law was improperly applied by the trial court to the known facts.

A mistake of law is not a basis for relief under Rule 60.02. *Spruce v. Spruce*, 2 S.W.3d 192, 195 (Tenn. Ct. App. 1998); *see also Selitsch*, 492 S.W.3d at 689 ("a mistake of law is not a ground for relief under Rule 60.02"). Because Seller submitted no affidavits or other evidentiary material in relation to her Rule 60.02 motion and is only asserting that the judgment reflects an error of law, Rule 60.02 cannot be applied to grant relief from the argued mistake of law made by the trial court.

The standards of Rule 60.02(5) are more demanding than those applicable to the other grounds for Rule 60.02 relief. *Hussey*, 538 S.W.3d at 486. Rule 60.02(5) functions as a catch-all to provide equitable relief when relief is not available under the other subsections. *Duncan v. Duncan*, 789 S.W.2d 557, 564 (Tenn. Ct. App. 1990). Its language is open ended but subject to a narrow interpretation. *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn. 1993). The rule "affords relief in the most extreme, unique, exceptional, or extraordinary cases and generally applies only to circumstances other than those contemplated in sections (1) through (4) of Rule 60.02." *Furlough*, 397 S.W.3d at 128 (quoting *Holiday v. Shoney's South, Inc.*, 42 S.W.3d 90, 94 (Tenn. Ct. App. 2000) (internal quotation marks omitted)). Reasons justifying relief under Rule 60.02(5) are found only in cases of overwhelming importance or in cases involving extraordinary circumstances or extreme hardship. *Federated Ins. Co. v. Lethocoe*, 18

S.W.3d 621, 624 (Tenn. 2000) (citing *Underwood*, 854 S.W.2d at 97). The bar for obtaining relief under Rule 60.02(5) is set very high and the moving party bears a heavy burden. *Delong v. Vanderbilt Univ.*, 186 S.W.3d 506, 511 (Tenn. Ct. App. 2005). A party remains under a duty to take legal steps to protect his own interests. *Hussey*, 538 S.W.3d at 486 (quoting *Banks v. Dement Constr. Co.*, 817 S.W.2d 16, 19 (Tenn. 1991)).

Seller again asserts the perceived error of law by the trial court in the original judgment that she certainly could have and should have perceived within the 30-day appeal period and which she could have appealed but failed to do so. A mistake of law is simply not a basis for Rule 60.02 relief. *Spruce*, 2 S.W.2d at 195. Seller does not show any extreme or extraordinary circumstances whatsoever and thus is not entitled to relief under Rule 60.02(5). We hold that the trial court did not err in denying the Rule 60.02 motion.

The trial court ordered Seller to return Clancy to his original status, as rescission is designed to put both parties in the position they were in when the contract was made. *Lamons v. Chamberlain*, 909 S.W.2d 795, 800 (Tenn. Ct. App. 1993). However, "rescission is not available if the parties cannot be placed in status quo." *Klosterman Dev. Corp.*, 102 S.W.3d at 635; *Lamons*, 909 S.W.2d at 801. In the judgment, the court recognized that if Seller was unable to return Clancy to status quo, with the original contract unenforceable, it could impose a quasi-contractual obligation as an equitable substitute. *Doe*, 46 S.W.3d at 197; *ICG Link, Inc. v. Steen*, 363 S.W.3d 533, 546 (Tenn. Ct. App. 2011); *Forrest Constr. Co., LLC v. Laughlin*, 337 S.W.3d 211, 227 (Tenn. Ct. App. 2009). Accordingly, there was no basis in law or in fact for the trial court to grant the requested relief.

## B.

We further find that neither *res judicata* nor collateral estoppel applies to bar the action for possession of the Real Property. The same claim or cause of action was not asserted in both suits, and there has been no showing that the issue to be precluded is identical to an issue decided in the earlier proceeding. Accordingly, the cause of action by Clancy seeking possession of the Real Property is not barred by any findings of fact in the original judgment and memorandum opinion.

## C.

Clancy seeks an award of damages and attorney fees pursuant to Tennessee Code Annotated section 27-1-122, which reads as follows:

> **Damages for frivolous appeal**. – When it appears to any

reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122. The statute authorizing an award of damages for frivolous appeals "must be interpreted and applied strictly so as not to discourage legitimate appeals." *See Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977) (citing the predecessor to Tennessee Code Annotated § 27-1-122). This court has discretion in awarding damages under this provision. *Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009).

The Sklars have lost 30 acres of farmland because they were unable to pay a $21,800 judgment. We respectfully decline to exercise our discretion to award further damages to Clancy in this appeal.

## V. CONCLUSION

The judgment of the trial court denying the motion for relief from the judgment filed by Seller and granting possession of the Real Property to Clancy is affirmed. Costs of appeal are assessed against the appellants, Mary Ann Sklar and Rosemary Sklar.

_____
JOHN W. MCCLARTY, JUDGE